UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MOTORS CORPORATION
and SATURN CORPORATION,

Plaintiffs,

Case No. 07-14464

Hon. Victoria A. Roberts

v.

UNITED STATES OF AMERICA,

Defendant.

_________________________________/

**CORRECTED OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL**

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Compel Production of Documents Withheld by Defendant Under Claims of Deliberative Process Privilege [Doc. 49]. The parties fully briefed the matter and the Court held a hearing on October 8, 2009. Natalie Keller appeared on behalf of GM and Saturn Corporations. Jason Bergman appeared on behalf of the United States. For the reasons below, the Court **GRANTS** the Motion in part and **DENIES** it in part.

## II. BACKGROUND

Plaintiffs General Motors Corporation ("GM") and Saturn Corporation ("Saturn") bring this action against Defendant United States of America ("USA") to recover nearly $129 million in Federal Insurance Contributions Act ("FICA") taxes allegedly overpaid.

The FICA taxes stem from bonus payments which Plaintiffs made to union member employees upon ratification of collective bargaining agreements in 1996, 1999, 2000 and 2003. The key issue is whether the bonuses were taxable as "wages" under FICA.

Two IRS revenue rulings are implicated -- Rev. Rul. 58-145, 1958-1 C.B. 360 and Rev. Rul. 2004-109, 2004-2 C.B. 958. Rev. Rul 58-145 considered whether two types of signing bonuses paid to baseball players are remuneration for services and thus wages; it concludes that a signing bonus is not a wage for FICA purposes, if it is not contingent on the performance of future services or continued employment.

Rev. Rul 2004-109 revoked Rev. Rul. 58-145's "contingent on services or continued employment" standard; the new standard says that any payment made in connection with "the establishment, maintenance, furtherance, alteration or cancellation of the employer-employee relationship or any of the terms and conditions thereof" is a wage, unless the employee provides "clear, separate, and adequate consideration" for the employer's payment that is not dependent upon "the employer-employee relationship and its component terms and conditions."

During the course of discovery, GM served two document requests on the USA seeking the production of documents relating to the interpretation, application and revocation of Rev. Rul. 58-145, and the development, interpretation, and application of Rev. Rul. 2004-109. The USA produced some documents, but withheld more than 550 documents asserting claims of deliberative process privilege.

GM seeks an Order compelling the USA to produce certain documents regarding Rev. Rul. 2004-109, which relate to: (1) the administrative refund claims of GM or other automakers (or the FICA tax treatment of CBA ratification bonuses), or (2) the effective

dates of Rev. Rul. 2004-109, *i.e*., that discuss, consider, articulate, justify, criticize, or explain the decision to apply that ruling prospectively to some taxpayers and prospectively to others, or that contain material considered or relied upon in connection with that decision. The documents are grouped into Category 1 and Category 2 documents. Category 1 documents are part of the administrative record of Rev. Rul. 2004-109 and include documents compiled before the ruling was released. Category 2 documents include documents purportedly created after the substantive content of Rev. Rul. 2004-109 was finalized and approved.

GM and Saturn say the sought-after documents are key to two core issues: (1) whether the Court should afford Rev. Rul. 2004-109 deference in this tax refund action; and (2) whether the IRS's decision to apply Rev. Rul. 2004-109, prospectively to certain taxpayers but retroactively to others, lacked a rational basis, was based on improper considerations, and was an abuse of discretion under § 7805(b) of the Internal Revenue Code. GM and Saturn claim that Rev. Rul. 2004-109 was issued to bolster the USA's position in contesting their refund claims, and should be disregarded.

The USA acknowledges a link between the refund claims and Rev. Rul. 2004-109, but disputes the contention that Rev. Rul. 2004-109 was issued to bolster the USA's position. The USA says the IRS did not view Rev. Rul. 58-145 as addressing payments like those made to the union employees, and well before the guidance project was initiated, the IRS had analyzed and suggested denial of GM's refund claims on the basis that Rev. Rul. 58-145 was distinguishable. The USA says the decision makers' individual thoughts on these issues are irrelevant and GM and Saturn have no legitimate need for deliberative documents reflecting thinking.

The USA adds that it already produced many non-deliberative documents, making the production of additional documents unwarranted and redundant to the information already in GM and Saturn's possession.

## III. ANALYSIS

### A. Overview

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

Fed. R. Civ. P. 26 also allows the Court to limit discovery in certain situations:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(c).

When deciding whether discovery should be limited, striking an appropriate

balance requires an understanding of the nature of tax refund cases and the role played in such litigation by IRS administrative determinations and statements, such as revenue rulings.

Tax refund cases are *de novo* proceedings. *Lewis v. Reynolds*, 284 U.S. 281, 283, 76 L. Ed. 293, 52 S. Ct. 145 (1932). Factual issues in such cases "are tried . . . with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings." *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000); see also *Dixon v. United States*, 381 U.S. 68, 74-75, 14 L. Ed. 2d 223, 85 S. Ct. 1301 (1965). As such, the Court's determination of plaintiffs' tax liability must be based upon the facts and merits presented to the Court and does not require (or even ordinarily permit) the Court to review findings or a record previously developed at the administrative level. See *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) (factual and legal analysis employed by Commissioner not relevant in a normal refund suit); *McLeod, II v. United States*, 2000 U.S. Dist. LEXIS 18012, 2000 WL 1902257 *2 (D. Nev. 2000) (same).

A "revenue ruling" is an interpretation of the law published by the IRS in its biannual cumulative bulletin, indicating how the IRS believes the tax law should be applied to specific factual situation that may affect any taxpayer. Treasury regulations indicate that the IRS intends taxpayers to rely on these rulings to the extent that the facts and circumstances concerning their situations are substantially the same as those in the ruling, but with an important proviso -- the regulations emphasize that such reliance is appropriate only if the ruling has been unaffected by subsequent legislation, regulations, cases or other revenue rulings. 26 C.F.R. § 601.601(d)-(e) (2001).

The IRS is not bound by a revenue ruling containing a mistake of law and may correct such mistake by retroactively revoking the ruling, "even where a taxpayer may have relied to his detriment." *Dixon,* 381 U.S. at 72-73; see also *Dickman et al v. Commissioner of IRS*, 465 U.S. 330, 104 S. Ct. 1086, 79 L. Ed. 2d 343 (1984).

The Supreme Court in *United States v. Mead Corp*., 533 U.S. 218, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001), held that administrative implementation of a statute is subject to *Chevron* deference if "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in exercise of that authority." *Mead,* 533 U.S. at 226-27. In applying the *Mead* test to revenue rulings, Congress delegated to the IRS the authority to make determinations having the force of law, e.g., rules and regulations pursuant to 26 U.S.C. § 7805(a). A revenue ruling promulgated by the Commissioner and approved by the Secretary under express authority of § 7805 represents a formal interpretive rule. Therefore, after *Mead*, revenue rulings should be considered as controlling precedent unless shown to be arbitrary or capricious. *Ammex, Inc. v. United States*, 2003-1 U.S. Tax Cas. (CCH) P70,195 (2002).

The Court reviews Plaintiff's Motion to Compel in this legal framework.

**B. Standard of Review**

GM and Saturn concede that in tax refund actions, the Court normally conducts a *de novo* review. They argue, however, that this case is not normal because the IRS issued Rev. Rul. 2004-109 in response to their refund requests and departed from its usual practice of applying adverse rulings prospectively. Accordingly, they say a heightened abuse of discretion standard applies, requiring the Court to review the full

administrative record.

The USA's position is that a plenary review of the IRS's decision is not allowed. The USA says that to the extent GM and Saturn's abuse of discretion claim is cognizable, the Court must consider it on the face of the ruling, and not conduct a review of the entire administrative record. Citing *FCC v. Beach Communications*, *Inc*., 508 U.S. 307 (1993), the USA says this Court's review is limited to whether there is a rational basis for treating a signing bonus paid to an individual baseball player under his initial employment contract differently than the automakers' lump sum payment to thousands of employees under collective bargaining agreements.

The USA also relies on the concurring opinion in *United States v. Kaiser*, 363 U.S. 299 (1960), in which Justice Frankfurter discussed the rational basis review on disparate treatment claims in 16 cases. In all of the cases, none of the courts looked beyond the text of the ruling. *Id*. at 309-15.

GM and Saturn cite *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) and *Wilson v. USA*, 588 F.2d 1168 (6th Cir. 1978) in support of their contention that plenary review of the entire administrative record is required. In *Overton Park*, the Supreme Court considered a citizen group's challenge to the Secretary of Transportation's decision approving construction of an interstate highway through a public park, despite directives in 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. 1653(f) and 138 of the Federal-Aid Highway Act of 1968, 23 U.S.C. 138, that special efforts should be made to protect park lands. The Court determined that the petitioners were entitled to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701. *Id*. at 410.

The standard of review, found in § 706 of the APA, required the reviewing court to review the "whole record." *Id*. at 413-14. Although *de novo* review was not required, because the lower courts based their review solely on litigation affidavits which were inadequate "post hoc" rationalizations, the Court remanded for a plenary review based on the full administrative record before the Secretary at the time of his decision. *Id*. at 419-20. The Court stated, however, that where administrative findings are made at the same time as an administrative decision, there must be a strong showing of bad faith or improper behavior before the district court can make an inquiry into the mental processes of the administrative decisionmakers. *Id*. at 410.

In *Wilson*, the Sixth Circuit considered whether taxpayer-lessors were entitled to a loss deduction under 26 U.S.C. § 165 by virtue of the demolition of a building by a lessee pursuant to a lease provision. The critical issue on appeal concerned the interpretation of Treas. Reg. § 1.165-3(b)(2) and the effect of an amended version of § 1.165-3(b)(2) promulgated after the entry of the district court judgment. The amended regulation covered the exact factual pattern involved in the case and retroactive application barred plaintiffs' claimed loss deduction. Noting that 26 U.S.C. § 7805(b) establishes a presumption that regulations be applied retroactively, the Court stated that regulations may be applied retroactively to pending litigation, subject to review for abuse of discretion. *Id*. at 1171-72. The Court construed the language of the regulations and applied four relevant factors in determining there was no abuse of discretion. *Id*. at 1173.

In *Beach Communications*, the Supreme Court considered whether the FCC's interpretation of the term "cable system" relative to the statutory exemption for certain

satellite master antenna television facilities violated the equal protection component of the Due Process Clause of the Fifth Amendment. The Court concluded that when courts conduct a rational basis review of statutory classifications under the equal protection clause, there is a "strong presumption of validity," and judicial review focuses only on whether there were plausible reasons for such classifications. *Id*. at 314. The Court added that actual motivation is "entirely irrelevant," legislative choice is not subject to courtroom fact-finding, and it may be based on rational speculation unsupported by evidence or empirical data." *Id*. at 315.

The Court is not persuaded that a full review of the administrative record is required; unlike *Overton Park* and *Wilson*, this case does not involve review of the whole record under the APA, nor does it involve retroactive application of a regulation to a previously litigated matter. Upon *de novo* review, the Court's inquiry is limited to determining whether the retroactive application of Rev. Rul. 2004-109 to automaker employees and the prospective application to professional athletes was an abuse of discretion and without rational basis.

**C. Category 1 Documents**

The USA relies on the deliberative process privilege to shield more than 500 documents which are considered Category 1 documents; these include draft revenue rulings, pre-decisional comments by individuals regarding the drafts, evaluations of options under consideration by the IRS and Treasury Department, and statements of individuals' personal views about published legal authorities.

The deliberative process privilege shields intra-governmental communications

relating to matters of law or policy from disclosure. See *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1116-17 (9th Cir. 1988). The underlying purpose of the privilege is to protect the quality of governmental decision-making by maintaining the confidentiality of advisory opinions, recommendations, and deliberations that comprise part of the process by which government formulates law or policy. See *Nat'l Wildlife Fed'n*, 861 F.2d at 1117.

Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed. *Redland Soccer Club v. Dept. of Army of the U.S.*, 55 F.3d 827, 856 (3rd Cir. 1995); *Mobil Oil Corp. v. Dept. of Energy*, 102 F.R.D. 1, 5 (N.D. N.Y. 1983) ("Mobil Oil II"). To come within the deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decision maker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of the consultative process . . . . *Rugiero v. United States Department of Justice*, 257 F.3d 534, 550 (6th Cir. 2001). "Factual materials are generally not privileged unless they are inextricably intertwined with policy-making processes. . . . Non-factual materials that express opinions or recommendations, on the other hand, are clearly protected." *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1227 (10th Cir. 2007) (citing *Nat'l Wildlife Fed'n,* 861 F.2d at 1119 (9th Cir. 1988). Draft documents are considered to be predecisional and exempt from disclosure if such material is deliberative in nature. *King v. Internal Revenue Service*, 684 F.2d 517 (7th Cir. 1982).

The initial burden of establishing the applicability of the privilege is on the government. *Redland Soccer Club*, 55 F.3d at 854; *Mobil Oil Corp. v. Dept. of Energy*,

520 F. Supp. 414, 416 (N.D. N.Y. 1981) ("Mobil Oil I"). Blanket assertions of the privilege are insufficient. *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26, 43 (1981). Rather, the agency must provide "precise and certain" reasons for preserving the confidentiality of designated material. *Mobil Oil I*, 520 F. Supp. at 416.

Finally, even where the privilege is properly asserted, it is not absolute and the court must determine whether the need for the evidence overrides the government's interest in nondisclosure. See *F.T.C. v. Warner Comm.* Inc., 742 F.2d 1156, 1161 (9th Cir. 1984).

GM and Saturn say this Court should apply the five factor test discussed in *Dairyland Power Co-op v. United States*, 77 Fed. Cl. 330, 338 (2007), to determine whether their need for the evidence outweighs the Government's interest in non-disclosure, so as to overcome the privilege: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. GM and Saturn contend that each of the balancing factors weighs in their favor.

The USA argues in opposition that GM and Saturn have not shown a sufficient evidentiary need that outweighs the harm that disclosure of the privileged deliberative materials would cause. The USA says it has a strong interest in protecting the withheld information and disclosure would be harmful because it would: (a) create public confusion by suggesting an agency position is a personal position; and (b) inhibit frank discussion of legal and policy matters, adversely affecting the quality of the IRS'

decisions and policies.

The USA adds that the IRS's decision not to apply a revenue ruling retroactively commands broad deference, *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 203-04 (5th Cir. 1996), and the Court need not consider the deliberative materials to evaluate the deference due Rev. Rul. 2004-109. It argues the relevant considerations on the Court's review of the discretionary power to adopt retroactive regulations include: (1) whether or to what extent the taxpayer justifiably relied on settled prior law or policy and whether or to what extent that putatively retroactive regulation alters that law; (2) the extent, if any, to which the prior law or policy has been implicitly approved by Congress, as by legislative re-enactment of the pertinent Code provisions; (3) whether retroactivity would advance or frustrate the interest in equality of treatment among similarly situated taxpayers; and (4) whether according retroactive effect would produce an inordinately harsh result, *Wilson*, 588 F.2d at 1172-73, and that none of these factors involves the actual deliberations of the IRS employees who made the decision.

The Court believes the USA made a sufficient showing of entitlement to the privilege. The Court will apply the *Dairyland Power Co-op* factors to determine whether the privilege should yield to GM and Saturn's asserted need for disclosure.

With regard to the first prong, the Court finds the deliberative materials are not relevant to the issue before the Court. In conducting its *de novo* review, this Court must consider whether there is a rational basis for retroactivity for automaker employees that does not apply with respect to professional athletes. This determination will be made on the face of the revenue rulings and will influence the degree of deference accorded to the rulings. See *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct.

161 (1944) (The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). Moreover, the USA concedes that the issuance of Rev. Rul. 2004-1009 was prompted, in part, by the automakers' refund claims, so there is no question regarding the link between the two.

The second prong weighs in favor of GM and Saturn. The documents are within the USA's exclusive control and cannot be obtained from other sources. However, the USA has already produced many non-deliberative documents from which GM and Saturn can argue their claims.

The third prong weighs equally in favor of the parties. The litigation involves in excess of $125 million and potentially affects thousands of employers and employees. Both parties have a strong interest in the resolution of this matter.

The fourth prong weighs in favor of GM and Saturn. The USA is a party in this litigation and seeks to benefit from invocation of the privilege. Its invocation of the privilege must be carefully scrutinized to ensure the privilege retains its proper narrow scope.

The fifth prong weighs heavily in favor of the USA. As the USA noted at oral argument, some of the withheld documents include draft rulings and comments made by government employees regarding published legal authorities. Release of this information has the potential to chill such frank discussions in the future. To the extent that GM and Saturn seek to discover why the IRS might have rejected any position not adopted in Rev. 2004-109, they are impermissibly "attempting to probe the editorial and

policy judgment of the decision makers." *Nat'l Wildlife Fed'n*, 861 F.2d at 1122.

In balancing the parties' competing interests, the Court concludes that GM and Saturn have not made a sufficient showing to overcome the privilege. The Category 1 documents are not discoverable. Because the Court can determine the applicability of the privilege for the Category 1 documents without reviewing them, the Court declines the request for a full *in camera* review.

**D. Category 2 Documents**

The USA also relies on the deliberative process privilege to shield more than 200 documents which are called Category 2 documents; all of these documents post-date June 16, 2004. Some are actual drafts of or communications regarding Rev. Rul. 2004-109. Some are drafts of or communications regarding the November 23, 2004 press release about the revenue ruling. Others are post-publication documents addressing other taxpayer requests and litigation hazards in cases involving Rev. Rul. 2004-109, as well as a legislative proposal relating to the definition of wages for employment tax purposes.

GM and Saturn contend the substance of Rev. Rul. 2004-109 was finalized on June 16, 2004, and there was no re-evaluation after that date. Hence, they argue any documents created after that date are not privileged. To qualify . . . under the "deliberative process" privilege, a document must be both (1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative," meaning "it must actually be related to the process by which policies are formulated." *Nat'l Wildlife Fed'n*, 861 F.2d at 1117 (quoting *Jordan v. U.S. Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)). Simply designating a document as a "draft" does not automatically

make it privileged under the deliberative process privilege. *Arthur Andersen & Co. v. IRS,* 679 F.2d 254, 257 (1982). The USA "must . . . identify the 'function and significance in agency's decision making process" of all redacted and withheld documents to qualify them as exempt under the deliberative process privilege."' *Wilderness Soc'y v. United States DOI,* 344 F. Supp. 2d 1,14 (2004) (quoting *Arthur Andersen*, 679 F.2d at 258).

The USA says the IRS Chief Counsel and the Treasury Department made revisions to the ruling more than a month after June 16, 2004. Review of the USA's privilege logs and declarations supports this contention. The Court finds that these predecisional drafts of or communications regarding Rev. Rul. 2004-109, addressing analysis, comments and suggested revisions to the ruling, are privileged. For the reasons stated in Section C, the Court finds that GM and Saturn have not overcome the privilege.

With regard to drafts of the press release and related correspondence, the USA says they are privileged because they were deliberative of and pre-decisional to the final press release. The USA relies on *ICM Registry, LLC v. United States DOC*, 538 F. Supp. 2d 130 (2008) and *Alexander v. FBI*, 186 F.R.D. 154 (1999) in support of this contention. In both *ICM Registry* and *Alexander*, the courts considered whether the deliberative process privilege applied to agency draft press releases and correspondences, and in both cases held they were privileged and not discoverable. Relying on *Sierra Club v. United States DOI*, 384 F.Supp. 2d 1 (D. D.C. 2004), the *ICM Registry* court reasoned that "deliberations regarding public policy are deliberations about policy, even if they involve 'massaging' the agency's public image." *ICM Registry*,

538 F. Supp. 2d at136. GM says *Mayer, Brown v. IRS,* 537 F. Supp. 2d 128 (2008) supports a contrary view. In *Mayer, Brown*, the court rejected a privilege claim for draft press releases because they did not "bear on the policy formulation" involved. *Id*. at 139.

The Court finds *ICM Registry* and *Alexander* more persuasive. Review of the privilege log and affidavit support the USA's privilege claims. As late as November 18, 2004, IRS attorneys exchanged correspondence about provisions to be included in the draft revenue ruling. On November 22 and 23, 2004, they exchanged comments and revised language for the draft press release in anticipation of publishing guidance relating to signing and ratification bonuses. All of this occurred prior to the November 23, 2004 release and December 13, 2004 publication date of Rev. Rul. 2004-109. The Court finds these documents are deliberative and also privileged. For the reasons stated in Section C, the Court finds that GM and Saturn have not overcome the privilege.

Lastly, with regard to the documents that post-date the publication of Rev. Rul. 2004-109, GM says the release of such post-decisional documents does not harm government decisionmaking, and thus they are not privileged. The USA contends they are pre-decisional and deliberative for taxpayer matters other than Rev. Rul. 2004-109, and therefore privileged on that basis. The Court cannot discern whether the USA's privilege claim regarding these post-publication documents is valid. The Court will conduct a limited *in camera* review of these 10 documents to determine if the privilege applies.

**E. In Camera Review**

Alternatively, GM and Saturn request that the Court review all of the documents *in camera* to determine whether the deliberative process privilege should apply. As outlined above, the Court finds the USA's declarations to be sufficiently detailed to provide a factual basis for evaluating the claimed exemptions. Because the Court can determine the applicability of the privilege for most of the documents without reviewing them, the Court declines the request for a full *in camera* review. However, the Court will conduct an *in camera* inspection of the 10 post-publication documents.

## IV. CONCLUSION

For the reasons stated, Plaintiffs' Motion to Compel is **GRANTED** in part and **DENIED** in part. The Court finds all of the Category 1 documents and all of the pre-publication Category 2 documents privileged and not discoverable.

Defendant must produce the following post-publication documents for *in camera* inspection within 14 days:

1. Bates Nos. US-10069 - US-10073
2. Bates No. US-10076
3. Bates Nos. US-10078-79
4. Bates Nos. US10082 - US 10086
5. Bates No. US-11273
6. Bates Nos. US-11296 - US-11297
7. Bates Nos. Treas 1 - Treas 9

The Court reserves opinion on these documents pending review.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 23, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 23, 2009.

s/Linda Vertriest
Deputy Clerk